## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19-cr-00093 (EGS) |
| | ) | |
| JOHN VICTOR REED, | ) | |
| | ) | |
| *Defendant* | ) | |

AND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 18-cr-00344 (EGS) |
| | ) | |
| JAROME SIMMONS, a.k.a. Bernard Byrd | ) | |
| | ) | |
| *Defendant* | ) | |


### BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA AS *AMICUS CURIAE*

_____

David M. Foster (D.C. Bar No. 497981)
Kathryn M. Ali (D.C. Bar No. 994633)
Toccara M. Nelson (D.C. Bar No. 1671708)
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
(202) 637-5911 (fax)

Of counsel:
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW
Washington, DC 20005
(202) 457-0800

**TABLE OF CONTENTS**

STATEMENT OF INTEREST OF *AMICUS CURIAE* ................................................................. 1

INTRODUCTION ......................................................................................................................... 2

    I.    THE USAO'S FIP POLICY IS OUT OF STEP WITH AND UNDERMINES
BIPARTISAN SENTENCING REFORM EFFORTS AT THE LOCAL AND NATIONAL
LEVEL. ..................................................................................................................................... 3

        A.    The FIP Policy Undermines Recent Criminal Justice Reform Efforts in the District...... 3

        B.    The FIP Policy Also Contravenes National Trends Toward Flexibility In Sentencing. .. 6

    II.    THE USAO'S FIP POLICY WILL DISPROPORTIONATELY PUNISH AND
INCARCERATE COMMUNITIES OF COLOR. .................................................................... 8

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*United States v. Reed*,
No. 19-cr-00093 (D.D.C. Apr. 21, 2020)..............................................................2, 5

*United States v. Simmons*,
No. 18-cr-00344 (D.D.C. Apr. 21, 2020)..............................................................2, 5

**STATUTES:**

*Incarceration Reduction Amendment Act of 2016, D.C. Law 21-238 §§ 301-06,
63 D.C. Reg. 15312 (eff. Apr. 4, 2017) ......................................................... *passim*

*Youth Rehabilitation Amendment Act of 2018, D.C. Law 22-197, 65 D.C. Reg.
9554 (eff. Dec. 13, 2018) .................................................................................1, 6

**OTHER AUTHORITIES:**

ACLU, *Fair Sentencing Act*, *Available at* https://www.aclu.org/issues/criminal-
law-reform/drug-law-reform/fair-sentencing-act (last visited Apr. 27, 2020)..........................7

*ACLU-DC, *Racial Disparities in D.C. Policing: Descriptive Evidence From
2013–2017*, *Available at* https://www.acludc.org/en/racial-disparities-dc-
policing-descriptive-evidence-2013-2017 (last updated July 31, 2019)..............................1, 10

*Keith L. Alexander, *As a Teen He Killed a Man. A New Law Has Given Him a
Second Chance*, WASH. POST (Sept. 6, 2018), *Available at*
https://www.washingtonpost.com/local/public-safety/an-opportunity-to-
change-new-dc-law-allows-juveniles-sentenced-as-adults-to-have-sentences-
reduced-after-20-years/2018/08/09/dcc65ff2-93eb-11e8-a679-
b09212fb69c2_story.html ...............................................................................4, 5, 6

*Bill 220-451, The Youth Rehabilitation Amendments Act of 2017: Hearing on Bill
22-451, the "Youth Rehabilitation Amendment Act of 2017" Before the DC
Council Committee on Judiciary and Public Safety* (2017) (statement of
Monica Hopkins-Maxwell, Executive Director, ACLU–DC), *Available at*
https://www.acludc.org/en/legislation/bill-220-451-youth-rehabilitation-
amendments-act-2017 .......................................................................................5

Curtis Black, *Locking Up More People Is Not the Solution to Gun Violence*, THE
CHICAGO REPORTER (Mar. 23, 2017), *Available at*
https://www.chicagoreporter.com/locking-up-more-people-is-not-the-solution-
to-gun-violence/ ...........................................................................................11

Michael Boggs & Gordon Ramsay, *New FBI Crime Data Takes Search for Solutions to the State, Local Level*, THE HILL (Oct. 3, 2017), *Available at* https://thehill.com/opinion/criminal-justice/353667-new-fbi-crime-data-takes-search-for-solutions-to-the-state-local .....................................................................................8

CALIFORNIANS FOR SAFETY AND JUSTICE, *Latino Voices: The Impacts of Crime and Criminal Justice Policies on Latinos* (June 2014), *Available at* https://www.prisonpolicy.org/scans/LatinoReport_lowres_6.17.14.pdf ................................10

David S. D'Amato, *Actually, Gun Restrictions Will Target the Black Community*, THE HILL (Aug. 5, 2019), *Available at* https://thehill.com/opinion/criminal-justice/456243-actually-gun-restrictions-will-target-the-black-community..............................9

Matt Ford, *What Caused the Great Crime Decline in the U.S.*, THE ATLANTIC (Apr. 15, 2016), *Available at* https://www.theatlantic.com/politics/archive/2016/04/what-caused-the-crime-decline/477408/.................................................................................................3, 11

*James Forman Jr., *D.C. Doubles Down on Destructive Prison First Policies*, WASH. POST (Feb. 14, 2019), *Available at* https://www.washingtonpost.com/opinions/localopinions/dc-doubles-down-on-destructive-prison-first-policies/2019/02/14/ebe8b11a-2e2d-11e9-86ab-5d02109aeb01_story.html.................................................................................................5

John Gramlich, *5 Facts About Crime in the U.S.*, PEW RESEARCH CTR. (Oct. 17, 2019), *Available at* https://www.pewresearch.org/fact-tank/2019/10/17/facts-about-crime-in-the-u-s/ ...................................................................................................3

Paul Guerino et al., *Prisoners in 2010*, U.S. DEP'T OF JUSTICE, *Available at* https://www.bjs.gov/content/pub/pdf/p10.pdf, (last updated Feb. 9, 2012) .............................7

Christopher Ingraham, *Black Men Sentenced to More Time for Committing the Exact Same Crime as a White Person, Study Finds*, WASH. POST (Nov. 16, 2017), *Available at* https://www.washingtonpost.com/news/wonk/wp/2017/11/16/black-men-sentenced-to-more-time-for-committing-the-exact-same-crime-as-a-white-person-study-finds/ ...................................................................................................9

Letter from the D.C. Sentencing Comm'n to the Honorable Charles Allen, Chairman, Comm. on Judiciary and Public Safety for the Council of the District of Columbia (Feb. 1, 2019), *Available at* https://dccouncil.us/wp-content/uploads/2019/02/JPS-Performance-Oversight-Responses-2019-SC.pdf...................10

Jonathan Lippman, *Give Judges More Leeway To Use Incarceration Alternatives for Violent Criminals*, USA TODAY (Jan. 24, 2019), *Available at* https://www.usatoday.com/story/opinion/policing/2019/01/24/violent-crime-mass-incarceration-alternatives-policing-the-usa-prison-jail/2483698002/ .............................6

*German Lopez, *Mass Incarceration in America, Explained in 22 Maps and Charts*, VOX, *Available at* https://www.vox.com/2015/7/13/8913297/mass-incarceration-maps-charts (last updated Oct. 11, 2016) ......................................6, 8

METRO. POLICE DEP'T, *Building a Safer DC, Metropolitan Police Statistical Report 2001–2005* (2006), *Available at* https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/ar_2001_2005.pdf ...................................................................................................3

Jeffrey D. Morenoff & David J. Harding, *Final Technical Report: Neighborhoods, Recidivism, and Employment Among Returning Prisoners* (2011), *Available at* https://www.ncjrs.gov/pdffiles1/nij/grants/236436.pdf ...........................6

Ashley Nellis, Ph.D, *The Color of Justice: Racial and Ethnic Disparity in State Prisons*, THE SENTENCING PROJECT (June 14, 2016), *Available at* https://www.sentencingproject.org/publications/color-of-justice-racial-and-ethnic-disparity-in-state-prisons/ ........................................................................10

P.R. 194, 2019 Council, 23rd Period (D.C. 2019), *Available at* http://lims.dccouncil.us/Download/42105/PR23-0194-Introduction.pdf ..............................12

Devah Pager, *Evidence Based Policy for Successful Prisoner Reentry*, 5 CRIMINOLOGY & PUB. POL'Y 505 (2006), *Available at* https://scholar.harvard.edu/files/pager/files/cpp_pager.pdf......................................................6

Don Parker, *D.C. Murder Rate Drops 73 Percent Since Bloodiest Years of 1990s & Crack Epidemic*, WJLA (Aug. 16, 2016), *Available at* https://wjla.com/news/local/dc-murder-rate-drops-73-percent-since-bloodiest-years-of-1990s-crack-epidemic.................................................................................3

Press Release, D.C. Council, DC Council Unanimously Passes Councilmember Allen's Youth Rehabilitation Amendment Act (July 10, 2018), *Available at* https://thedcline.org/2018/07/10/dc-council-unanimously-passes-councilmember-allens-youth-rehabilitation-amendment-act/...................................5

*PRISON POLICY INST., *District of Columbia Profile*, *Available at* https://www.prisonpolicy.org/profiles/DC.html (last visited Apr. 26, 2020) ...........................4

*Karl A. Racine & Charles Allen, *OP-ED: No, D.C.'s Criminal Justice Reform Efforts Don't Go Too Far*, OFFICE OF THE ATT'Y GEN. FOR THE DISTRICT OF COLUMBIA (Aug. 30, 2019), *Available at* https://oag.dc.gov/blog/op-ed-no-dcs-criminal-justice-reform-efforts-dont .........................................................................4

RIGHT ON CRIME, *The Conservative Case for Reform*, *Available at* http://rightoncrime.com/the-conservative-case-for-reform/ (last visited Apr. 27, 2020) .........................................................................................................8

Kahryn Riley, *Jobs Are the Ultimate Criminal Justice Reform*, THE HILL (Apr. 11, 2018), *Available at* https://thehill.com/opinion/criminal-justice/382623-jobs-are-the-ultimate-criminal-justice-reform ................................................................6

THE SENTENCING PROJECT, *Criminal Justice Facts*, *Available at* https://www.sentencingproject.org/criminal-justice-facts/ (last visited Apr. 27, 2020) ................................................................................................................9

*THE SENTENCING PROJECT, *Fact Sheet: Trends in U.S. Corrections*, *Available at* https://www.sentencingproject.org/wp-content/uploads/2016/01/Trends-in-US-Corrections.pdf (last updated June 2019) ..................................................3, 7, 8

THE SENTENCING PROJECT, *Race & Justice, News: One-Third of Black Men Have Felony Convictions* (Oct. 10, 2017), *Available at* https://www.sentencingproject.org/news/5593/ ....................................................10

*THE SENTENCING PROJECT, *Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System* (Apr. 19, 2018), *Available at* https://www.sentencingproject.org/publications/un-report-on-racial-disparities/ ................................................................................................................9

Jeremy Travis, Bruce Western et al., *National Academy of Sciences – The Growth of Incarceration in the United States – Exploring Causes and Consequences*, NAT'L ACAD. OF SCI., *Available at* http://johnjay.jjay.cuny.edu/nrc/NAS_report_on_incarceration.pdf ......................................11

Donald J. Trump, *Super Bowl Ad: Criminal Justice Reform*, YOUTUBE (Feb. 2, 2020), *Available at* https://www.youtube.com/watch?v=Xtv_PJE8xns....................................7

THE WHITE HOUSE, *President Donald J. Trump is Committed to Building on the Successes of the First Step Act* (Apr. 1, 2019), *Available at* https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-committed-building-successes-first-step-act/ ...........................................................7

U.S. DEP'T OF JUSTICE, Office of Public Affairs, *Announcing New Clemency Initiative, Deputy Attorney General James M. Cole Details Broad New Criteria for Applicants* (Apr. 23, 2014), *Available at* https://www.justice.gov/opa/pr/announcing-new-clemency-initiative-deputy-attorney-general-james-m-cole-details-broad-new .....................................................7

U.S. SENTENCING COMM'N, *Quick Facts: Felon in Possession of a Firearm*, *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY18.pdf (last visited Apr. 27, 2020) ..............................................................................................................10

Jeff Vanderslice, *Don't Let the First Step Act be the Last Step in Criminal Justice Reform*, CATO INST. (Dec. 21, 2018) .......................................................................8

*Peter Wagner & Wendy Sawyer, *States of Incarceration: The Global Context 2018*, PRISON POLICY INST. (2018), *Available at* https://www.prisonpolicy.org/global/2018.html ....................................................................4

Brian W. Walsh, *Doing Violence to the Law; The Over-Federalization of Crime*, HERITAGE FOUND. (June 9, 2011), *Available at* https://www.heritage.org/crime-and-justice/commentary/doing-violence-the-law-the-over-federalization-crime .............................................................................................8

**STATEMENT OF INTEREST OF *AMICUS CURIAE***

The American Civil Liberties Union of the District of Columbia ("ACLU-DC") is a non-profit, non-partisan organization with more than 14,000 local members.  For nearly sixty years, the ACLU-DC has advocated for criminal justice reform, among other issues, for those who live in, work in, and visit the District.

The ACLU-DC has been particularly concerned with the problem of racial disparities in law enforcement.  For instance, the ACLU-DC successfully lobbied for a robust data-collection mandate regarding police stops as part of the Neighborhood Engagement Achieves Results Act of 2016, then sued and won an injunction in 2019 requiring the Metropolitan Police Department to begin implementing that provision of law.  The ACLU-DC successfully lobbied for the decriminalization of transit-fare evasion under District law because of its disproportionate enforcement against Washingtonians of color.  The ACLU-DC successfully lobbied for the decriminalization of marijuana possession for the same reason.  The ACLU-DC published a report in 2019, "Racial Disparities in D.C. Policing: Descriptive Evidence From 2013–2017," analyzing five years' worth of arrest data and concluding that black people were arrested at 10 times the rate of white people.  ACLU-DC, *Racial Disparities in D.C. Policing: Descriptive Evidence From 2013–2017.*[1]  And the ACLU-DC testified in support of the Youth Rehabilitation Amendment Act, one of the laws discussed in this brief and implicated by the policy under which the defendants here are being prosecuted.

Under the new felon-in-possession ("FIP") policy of the District of Columbia's U.S. Attorney's Office ("USAO"), the USAO has decided to charge all felon-in-possession offenses in federal court, rather than the Superior Court of the District of Columbia.  This policy represents a

---

[1]  *Available at,*  https://www.acludc.org/en/racial-disparities-dc-policing-descriptive-evidence-2013-2017 (last updated July 31, 2019).

significant setback for the District's efforts to implement well-researched, localized, and flexible criminal sentencing policies. By imposing harsher penalties, the USAO's FIP policy will exacerbate the already high incarceration rate of D.C. residents, and particularly its black and brown residents. At the same time, research and data suggest that it is unlikely that the USAO's FIP policy will actually be effective in reducing crime in the District. The new FIP policy's unsubstantiated benefits fail to justify the policy's inevitable costs to D.C.'s young offenders and communities of color. For all of these reasons, the ACLU-DC has a strong interest in this matter and supports Mr. Reed's and Mr. Simmons's motions to dismiss their indictments.[2]

## INTRODUCTION

The United States incarcerates its citizens at an alarming rate, especially in comparison to the rest of the world. Over the past decade, the District of Columbia—and the United States more generally—has made significant progress toward adopting less draconian sentencing policies. The USAO's new FIP policy is out of step with these trends and will undermine criminal justice reforms made in the District in recent years.

Evidence also suggests that the FIP policy will increase racially disproportionate policing and sentencing. The District of Columbia already arrests black residents at a higher rate than others. And because black Americans are disproportionately more likely to have previous felony convictions, they would be subject to harsher sentences under the FIP policy. The likely result, therefore, is that black and Latino residents and visitors of the District will be overrepresented as

---

[2] The Court previously granted the ACLU-DC leave to file this brief. *See United States v. Reed*, No. 19-cr-00093 (D.D.C. Apr. 21, 2020), ECF No. 40; *United States v. Simmons*, No. 18-cr-00344 (D.D.C. Apr. 21, 2020), ECF No. 40. No counsel for a party authored this brief in whole or in part, and no counsel for a party (nor a party itself) made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amici* or their counsel made a monetary contribution to its preparation or submission.

FIP arrestees, and thus subject to longer prison sentences under the federal sentencing scheme than if they were sentenced in D.C. Superior Court.

The FIP policy could have additional negative effects on the District's residents and visitors too. For example, statistical and anecdotal evidence from other jurisdictions shows that the establishment of a harsher sentencing regime such as the USAO's FIP policy would not only fail to reduce crime, but may actually increase crime in the District of Columbia. This result would be contrary to the USAO's stated intention of its FIP policy. For all of these reasons, in addition to those advanced by Mr. Reed and Mr. Simmons, the Court should grant Mr. Reed's and Mr. Simmons's motions to dismiss.

## ARGUMENT

### I. THE USAO'S FIP POLICY IS OUT OF STEP WITH AND UNDERMINES BIPARTISAN SENTENCING REFORM EFFORTS AT THE LOCAL AND NATIONAL LEVEL.

#### A. The FIP Policy Undermines Recent Criminal Justice Reform Efforts in the District.

The 1990s and early 2000s saw an explosion in the local (and national) prison populations.[3] THE SENTENCING PROJECT, *Fact Sheet: Trends in U.S. Corrections*.[4] As of 2018,

---

[3] These increases cannot be chalked up to an increase in the crime rate. Crime in the District of Columbia generally decreased over the 1990s and 2000s. *See* Don Parker, *D.C. Murder Rate Drops 73 Percent Since Bloodiest Years of 1990s & Crack Epidemic*, WJLA (Aug. 16, 2016), *Available at* https://wjla.com/news/local/dc-murder-rate-drops-73-percent-since-bloodiest-years-of-1990s-crack-epidemic; METRO. POLICE DEP'T, *Building a Safer DC, Metropolitan Police Statistical Report 2001-2005* (2006), *Available at* https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/ar_2001_2005.pdf (explaining that the District's crime rate had been "cut in half" from 1996-2005). Violent crime, in particular, decreased over that same period both within the District and nationally. FBI data shows that "the violent crime rate fell 51% between 1993 and 2018," while data from the Bureau of Justice Statistics shows that the violent crime rate dropped "71% during that [same] span." John Gramlich, *5 Facts About Crime in the U.S.*, PEW RESEARCH CTR. (Oct. 17, 2019), *Available at* https://www.pewresearch.org/fact-tank/2019/10/17/facts-about-crime-in-the-u-s/. "By virtually any metric, Americans now live in one of the least violent times in the nation's history." Matt Ford, *What Caused the Great Crime Decline in the U.S.*, THE ATLANTIC (Apr. 15, 2016),

the District of Columbia incarcerated approximately one out of every 87 residents; significantly higher than the national average.  Peter Wagner & Wendy Sawyer, *States of Incarceration: The Global Context 2018*, PRISON POLICY INST. (2018) (finding that the U.S. incarcerated approximately 1 out of every 143 people (698 out of every 100,000));[5] PRISON POLICY INST., *District of Columbia Profile*;[6] *see also* Karl A. Racine & Charles Allen, *OP-ED: No, D.C.'s Criminal Justice Reform Efforts Don't Go Too Far*, OFFICE OF THE ATT'Y GEN. FOR THE DISTRICT OF COLUMBIA (Aug. 30, 2019).[7]

Perhaps in an effort to address these statistics, over the past decade, the District has begun to embrace policies aimed at decreasing incarceration rates.  Local lawmakers addressed issues with the District's culture of incarceration during the mid-2010s.  In 2019, for example, the District described its commitment to resentencing efforts "rooted in data, research and science" aimed at reducing the "excessive mandatory minimum sentencing guidelines which disproportionately targeted people of color."  Racine, *supra* note 7.  In this vein, the District has passed legislation such as the Incarceration Reduction Amendment Act of 2016 ("IRAA"), which originally permitted incarcerated juvenile offenders imprisoned for at least 20 years to request sentence reductions from a D.C. Superior Court judge.[8]  Incarceration Reduction Amendment Act of 2016, D.C. Law 21-238 §§ 301-06, Act 21-568, 63 D.C. Reg. 15312 (eff.

---

*Available at* https://www.theatlantic.com/politics/archive/2016/04/what-caused-the-crime-decline/477408/.

[4] *Available at* https://www.sentencingproject.org/wp-content/uploads/2016/01/Trends-in-US-Corrections.pdf (last updated June 2019).

[5] *Available at* https://www.prisonpolicy.org/global/2018.html.

[6] *Available at* https://www.prisonpolicy.org/profiles/DC.html (last visited Apr. 26, 2020).

[7] *Available at* https://oag.dc.gov/blog/op-ed-no-dcs-criminal-justice-reform-efforts-dont.

[8] In 2019, D.C. Council further amended the IRAA to grant juvenile offenders the opportunity for a sentence reduction if they served at least 15, rather than 20, years in prison.  Racine, *supra* note 7.

Apr. 4, 2017); Keith L. Alexander, *As a Teen He Killed a Man. A New Law Has Given Him a Second Chance*, WASH. POST (Sept. 6, 2018).[9]

The D.C. Council built on the momentum of the IRAA through additional criminal justice reforms in support of sentencing flexibility.[10] These efforts, and others, are set out in detail in the District of Columbia's amicus briefs filed in support of Mr. Reed's and Mr. Simmons's motions to dismiss.  *See* Br. of the District of Columbia as Amicus Curiae, *United States v. Reed*, No. 19-cr-00093 (D.D.C. Apr. 21, 2020), ECF No. 39; Br. of the District of Columbia as Amicus Curiae, *United States v. Simmons*, No. 18-cr-00344 (D.D.C. Apr. 21, 2020), ECF No. 39.  The D.C. Council enacted these policies to provide younger offenders with opportunities to clear their records and start fresh by following certain, judge-issued requirements.  James Forman Jr., *D.C. Doubles Down on Destructive Prison First Policies*, WASH. POST (Feb. 14, 2019).[11]  Once their convictions are set aside, deserving individuals can fully participate in society – their convictions "will no longer haunt them every time they apply for a job, seek housing or attempt to serve on a jury."  *Id.*

The USAO's FIP policy undermines and threatens to undermine the progress achieved by these recent reforms.  For example, an offender's case must have been originally heard in D.C.

---

[9]  *Available at*  https://www.washingtonpost.com/local/public-safety/an-opportunity-to-change-new-dc-law-allows-juveniles-sentenced-as-adults-to-have-sentences-reduced-after-20-years/2018/08/09/dcc65ff2-93eb-11e8-a679-b09212fb69c2_story.html.

[10]  *See, e.g.*, *Bill 220-451, The Youth Rehabilitation Amendments Act of 2017: Hearing on Bill 22-451, the "Youth Rehabilitation Amendment Act of 2017" Before the DC Council Committee on Judiciary and Public Safety* (2017) (statement of Monica Hopkins-Maxwell, Executive Director, ACLU–DC),  *Available at*  https://www.acludc.org/en/legislation/bill-220-451-youth-rehabilitation-amendments-act-2017; Press Release, D.C. Council, DC Council Unanimously Passes Councilmember Allen's Youth Rehabilitation Amendment Act (July 10, 2018), *Available at* https://thedcline.org/2018/07/10/dc-council-unanimously-passes-councilmember-allens-youth-rehabilitation-amendment-act/.

[11]  *Available at*  https://www.washingtonpost.com/opinions/localopinions/dc-doubles-down-on-destructive-prison-first-policies/2019/02/14/ebe8b11a-2e2d-11e9-86ab-5d02109aeb01_story.html.

Superior Court to be eligible for sentence review under the IRAA.  Alexander, *supra* note 9.

Removing felon-in-possession cases from D.C. Superior Court will divest opportunities for later

resentencing through the IRAA from young offenders.  Individuals would be subject to longer

jail sentences, thus contributing to the District's high incarceration rate.

Policies such as the IRAA and Youth Rehabilitation Amendment Act[12] help to prevent

recidivism and reduce crime by helping individuals who have had contact with the justice system

reenter society and obtain employment.[13]  The USAO's FIP policy prohibits individuals from

experiencing the benefits of local policies such as the IRAA.  Rather, the convictions of

individuals charged under the new FIP policy will remain on their records.  Their convictions

will haunt them every time they apply for a job, seek housing, or attempt to serve on a jury, and

these types of difficulties, in turn, contribute to recidivism.[14]

### B. The FIP Policy Also Contravenes National Trends Toward Flexibility In Sentencing.

The same kinds of sentencing reforms that the District has embraced over the past decade

are being adopted at the national level, too, on a largely bipartisan basis.  German Lopez, *Mass*

---

[12] Hopkins-Maxwell, *supra* note 10.

[13] *See, e.g.*, Kahryn Riley, *Jobs Are the Ultimate Criminal Justice Reform*, THE HILL (Apr. 11, 2018), *Available at* https://thehill.com/opinion/criminal-justice/382623-jobs-are-the-ultimate-criminal-justice-reform; Jonathan Lippman, *Give Judges More Leeway To Use Incarceration Alternatives for Violent Criminals*, USA TODAY (Jan. 24, 2019), *Available at* https://www.usatoday.com/story/opinion/policing/2019/01/24/violent-crime-mass-incarceration-alternatives-policing-the-usa-prison-jail/2483698002/ (asserting that alternatives such as cognitive behavioral therapy could reduce recidivism by half and championing other "community-based alternatives").

[14] *See, e.g.*, Devah Pager, *Evidence Based Policy for Successful Prisoner Reentry*, 5 CRIMINOLOGY & PUB. POL'Y 505 (2006), *Available at* https://scholar.harvard.edu/files/pager/files/cpp_pager.pdf; Jeffrey D. Morenoff & David J. Harding, *Final Technical Report: Neighborhoods, Recidivism, and Employment Among Returning Prisoners* (2011), *Available at* https://www.ncjrs.gov/pdffiles1/nij/grants/236436.pdf (explaining that "[s]uccessful reentry is challenged by barriers facing former prisoners in housing, employment, and access to services and by former prisoners' disadvantaged positions with regard to education, work experience, social capital, and mental and physical health") (citation omitted).

*Incarceration in America, Explained in 22 Maps and Charts*, VOX (discussing that lawmakers across the country have begun to reconsider "tough on crime" policies);[15] *see also* Paul Guerino et al., *Prisoners in 2010*, U.S. DEP'T OF JUSTICE.[16]   For example, legislation such as the Fair Sentencing Act of 2010 "represent[ed] a decade-long, and truly bipartisan, effort to reduce the racial disparities caused by the draconian crack cocaine sentencing laws and to restore confidence in the criminal justice system — particularly in communities of color." ACLU, *Fair Sentencing Act*.[17]   Likewise, the Obama Administration's 2014 Clemency Initiative broadened clemency criteria to specifically combat "older, stringent punishments that [were] out of line with" today's sentences.   U.S. DEP'T OF JUSTICE, Office of Public Affairs, *Announcing New Clemency Initiative, Deputy Attorney General James M. Cole Details Broad New Criteria for Applicants* (Apr. 23, 2014).[18]   Other reports note a gradual decline in the U.S. prison population since approximately 2008. *See* THE SENTENCING PROJECT, *supra* note 4.

One policy that has been embraced by a variety of stakeholders within the criminal justice system—including law enforcement—is to support localized solutions to crime, where offenders are sentenced in state rather than federal courts.   For example, some members of law enforcement support the movement to localize solutions to crime, where "[s]tates and

---

[15]   *Available at* https://www.vox.com/2015/7/13/8913297/mass-incarceration-maps-charts (last updated Oct. 11, 2016).

[16] *Available at* https://www.bjs.gov/content/pub/pdf/p10.pdf, (last updated Feb. 9, 2012).

[17]   *Available at* https://www.aclu.org/issues/criminal-law-reform/drug-law-reform/fair-sentencing-act (last visited Apr. 27, 2020).   *See also* THE WHITE HOUSE, *President Donald J. Trump is Committed to Building on the Successes of the First Step Act* (Apr. 1, 2019), *Available at* https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-committed-building-successes-first-step-act/.

[18]   *Available at* https://www.justice.gov/opa/pr/announcing-new-clemency-initiative-deputy-attorney-general-james-m-cole-details-broad-new.   Further demonstrating the nation's trend for bipartisan criminal justice reform, President Trump's PAC ran a Super Bowl advertisement highlighting criminal justice reform initiatives pushed by his administration that embrace clemency and other downward sentencing policies.   Donald J. Trump, *Super Bowl Ad: Criminal Justice Reform*, YOUTUBE (Feb. 2, 2020), *Available at* https://www.youtube.com/watch?v=Xtv_PJE8xns.

communities should collaborate with community members and stakeholder organizations when reviewing data and deciding on how best to allocate resources and develop public safety improvement and crime prevention strategies."  Michael Boggs & Gordon Ramsay, *New FBI Crime Data Takes Search for Solutions to the State, Local Level*, THE HILL (Oct. 3, 2017).[19]  De-federalizing criminal justice solutions through "locally-driven conversation[s] about data-driven solutions" produced positive results in South Carolina, Michigan, and Georgia, where "recidivism rates [fell] significantly" according to a report issued in 2017.  *Id.*  Even many organizations that historically embraced harsh, "tough on crime" policies now endorse de-federalized, flexible, and downward sentencing policies.[20]

The USAO's FIP policy represents a step in the opposite direction, removing criminal justice policy from a local government and imposing a federal policy determination that is at odds with the local policy vision on criminal justice.

## II.     THE USAO'S FIP POLICY WILL DISPROPORTIONATELY PUNISH AND INCARCERATE COMMUNITIES OF COLOR.

In addition to being out of step with local and national downward sentencing trends, the FIP policy will also have serious detrimental consequences for District residents and visitors charged under the USAO's new regime.  And research suggests that the FIP policy is likely to disproportionately impact communities of color within the District.  Data show that black defendants in particular—and especially black men—"get longer sentences for the same crimes." Lopez, *supra* note 15; *see also* THE SENTENCING PROJECT, *supra* note 4.  After controlling for a

---

[19]  *Available at* https://thehill.com/opinion/criminal-justice/353667-new-fbi-crime-data-takes-search-for-solutions-to-the-state-local.

[20]  *See, e.g.*, Brian W. Walsh, *Doing Violence to the Law; The Over-Federalization of Crime*, HERITAGE FOUND. (June 9, 2011), *Available at* https://www.heritage.org/crime-and-justice/commentary/doing-violence-the-law-the-over-federalization-crime; RIGHT ON CRIME, *The Conservative Case for Reform*, http://rightoncrime.com/the-conservative-case-for-reform/ (last visited Apr. 27, 2020); Jeff Vanderslice, *Don't Let the First Step Act be the Last Step in Criminal Justice Reform*, CATO INST. (Dec. 21, 2018).

"wide variety of sentencing factors" which include age, education, citizenship, weapon possession, and prior criminal history, the United States Sentencing Commission found that "[b]lack men who commit the same crimes as white men receive federal prison sentences that are, on average nearly 20 percent longer."  Christopher Ingraham, *Black Men Sentenced to More Time for Committing the Exact Same Crime as a White Person, Study Finds*, WASH. POST (Nov. 16, 2017).[21]

Black Americans are also more likely to be arrested for crimes like felon-in-possession. Statistics show that "African Americans are more likely than white Americans to be arrested;" and "once arrested, they are more likely to be convicted; and once convicted, and they are more likely to experience lengthy prison sentences."  THE SENTENCING PROJECT, *Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System* (Apr. 19, 2018).[22] And historically, penalties for firearm offenses "have systematically targeted out-groups at key points in the country's history, relegating black Americans to second-class status in favor of a political and economic status quo."  David S. D'Amato, *Actually, Gun Restrictions Will Target the Black Community*, THE HILL (Aug. 5, 2019).[23]  Black Americans are still disproportionately sentenced under the federal firearm sentencing framework; in fiscal year 2018, more than 56 percent of federal firearm offenders were black.  *Id*.  The USAO's FIP policy could also negatively affect the District's Latino population, another marginalized community subject to over-policing and harsher prison sentences.[24]

---

[21]    *Available at* https://www.washingtonpost.com/news/wonk/wp/2017/11/16/black-men-sentenced-to-more-time-for-committing-the-exact-same-crime-as-a-white-person-study-finds/.

[22] *Available at* https://www.sentencingproject.org/publications/un-report-on-racial-disparities/.

[23] *Available at* https://thehill.com/opinion/criminal-justice/456243-actually-gun-restrictions-will-target-the-black-community.

[24]    *See, e.g.*, THE SENTENCING PROJECT, *Criminal Justice Facts*, *Available at* https://www.sentencingproject.org/criminal-justice-facts/ (last visited Apr. 27, 2020) (extrapolating that 1 in 6 Latino male U.S. residents born in 2001 will likely be imprisoned);

The USAO's FIP policy will worsen racial disparities in sentencing by subjecting already black and brown communities—whose members are already over-represented in the prison population—to harsher prison sentences.  From July 2017 to July 2018, for example, the average felon-in-possession sentence in D.C. Superior Court was 20.89 months.  Letter from the D.C. Sentencing Comm'n to the Honorable Charles Allen, Chairman, Comm. on Judiciary and Public Safety for the Council of the District of Columbia (Feb. 1, 2019).[25]  This average fell to 16.34 months in the latter half of 2018 as a result of reforms by the D.C. Sentencing Commission.  *Id.*  By contrast, the national average federal felon-in-possession sentence during fiscal year 2018 was 64 months—***four times higher*** than the average FIP sentence in D.C. Superior Court.  U.S. SENTENCING COMM'N, *Quick Facts: Felon in Possession of a Firearm*.[26]  Because of the USAO's FIP policy, black and brown residents – and particularly black men – will likely 1) have prior felony records,[27]  2) be overrepresented as arrestees under the FIP policy,[28] and thus 3) be incarcerated for longer periods of time than if they were sentenced in D.C. Superior Court.

---

*Latino Voices: The Impacts of Crime and Criminal Justice Policies on Latinos*, CALIFORNIANS FOR SAFETY AND JUSTICE, (June 2014), *Available at* https://www.prisonpolicy.org/scans/LatinoReport_lowres_6.17.14.pdf;  Ashley Nellis, Ph.D, *The Color of Justice: Racial and Ethnic Disparity in State Prisons*, THE SENTENCING PROJECT (June 14, 2016), *Available at* https://www.sentencingproject.org/publications/color-of-justice-racial-and-ethnic-disparity-in-state-prisons/.  When mapping this data to the current federal sentencing framework, Latinos could also suffer disproportionately from the USAO's FIP policy.

[25] *Available at* https://dccouncil.us/wp-content/uploads/2019/02/JPS-Performance-Oversight-Responses-2019-SC.pdf.

[26] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY18.pdf, (last visited Apr. 27, 2020).

[27] *See* THE SENTENCING PROJECT, *Race & Justice, News: One-Third of Black Men Have Felony Convictions* (Oct. 10, 2017), *Available at* https://www.sentencingproject.org/news/5593/ (citing a report which estimated that "one-third of black men had a felony conviction in 2010—a significant increase over the past 30 years and far above the rate for white men").

[28] *See* ACLU-DC, supra note 1 (explaining that "[f]rom 2013 to 2017, [b]lack individuals composed 47% of D.C.'s population but 86% of its arrestees" when "[d]uring this time, [b]lack people were arrested at 10 times the rate of white people").

These negative effects are unlikely to reduce crime in the District. Evidence has repeatedly shown that harsher sentences for gun possession crimes, like those seen in the USAO's FIP policy, do not deter crime. The National Academy of Sciences' "landmark 2012 report"[29] on the U.S. prison system found that longer prison sentences, provided "little indication of a deterrent effect," as "[m]ost offenders reach a point when they age out of criminal behavior." Matt Ford, *What Caused the Great Crime Decline in the U.S.*, THE ATLANTIC (Apr. 15, 2016).[30] Thus, "[f]or this reason, the academy's report concluded that lengthy prison sentences are ineffective as a crime-control measure in virtually all circumstances," and "[s]ome research even suggests harsh prison conditions could make inmates more likely to reoffend." *Id.* (internal quotation marks omitted).

Illinois is a prime example of harsh sentencing policies' ineffectiveness. The State has some of the harshest penalties for gun offenses in the nation. Curtis Black, *Locking Up More People Is Not the Solution to Gun Violence*, THE CHICAGO REPORTER (Mar. 23, 2017).[31] But "[t]he number of weapons offenders in Illinois prisons is three times higher than in 2000." *Id.* While homicide rates generally fell, those rates fell "no faster [] in Illinois than in states where probation is still an option for gun offenders." *Id.* And in Chicago, homicide rates have still spiked dramatically in recent years despite Illinois's increase in penalties for gun offenses. *Id.*

It is thus no surprise that the D.C. Council has concluded that "[l]ong sentences […] are not proven to deter crime or prevent recidivism, contribute to the District having the highest incarceration rate in the United States, and overwhelmingly affect" the District's black residents.

---

[29] Jeremy Travis, Bruce Western et al., *National Academy of Sciences – The Growth of Incarceration in the United States – Exploring Causes and Consequences*, NAT'L ACAD. OF SCI., http://johnjay.jjay.cuny.edu/nrc/NAS_report_on_incarceration.pdf.

[30] *Available at* https://www.theatlantic.com/politics/archive/2016/04/what-caused-the-crime-decline/477408/.

[31] *Available at* https://www.chicagoreporter.com/locking-up-more-people-is-not-the-solution-to-gun-violence/.

P.R. 194, 2019 Council, 23rd Period (D.C. 2019)[32].   In the face of this considered judgment by the people's elected representatives in the D.C. Council, the USAO's FIP policy will circumvent and undermine the criminal-justice reform policies approved by the people of the District through their own Council—to the detriment of District residents and in particular the District's residents of color.

## CONCLUSION

The Court should grant Mr. Reed's and Mr. Simmons's motions to dismiss.

Respectfully submitted,

/s/ *David M. Foster*
David M. Foster (D.C. Bar No. 497981)
Kathryn M. Ali (D.C. Bar No. 994633)
Toccara M. Nelson (D.C. Bar No. 1671708)
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
(202) 637-5911 (fax)

Of counsel:
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW
Washington, DC 20005
(202) 457-0800

April 28, 2020

---

[32] *Available at* http://lims.dccouncil.us/Download/42105/PR23-0194-Introduction.pdf.